# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL SCHMIDT | CIVIL ACTION |
| VERSUS | No. 16-15902 |
| BRETT STASSI, ET AL. | SECTION I |

## ORDER AND REASONS

Eugenie Boisfontaine went missing in Baton Rouge in 1997. Her battered and decomposing body was found three months later in a Louisiana bayou. The murder has never been solved.

Now, twenty years later, the search to find her killer is playing out on the *Killing Fields*—a nationally televised reality show on the Discovery Channel. Detective Rodie Sanchez, a grizzled veteran of the Iberville Parish Sheriff's office, came out of retirement to lead the search for Eugenie's murderer. Detective Sanchez has vowed that only death will stop him.

The Sheriff's investigators attempted to link potential suspects to DNA evidence found near the body. Most of the individuals of interest to the investigation voluntarily provided the investigative team with DNA samples. Michael Schmidt—Eugenie's ex-husband—did not.

Detective Sanchez found that refusal suspicious. He could not believe that Schmidt, if Schmidt was truly innocent, would not want to help locate Eugenie's murderer. Further, the fact that Schmidt had the temerity to hire multiple criminal

defense lawyers, including the former United States Attorney for the Eastern District of Louisiana, made Detective Sanchez all the more suspicious.

With Schmidt not cooperating, the investigators set out to obtain a DNA sample involuntarily. They initially tried a subpoena. But when Schmidt's legal team filed a motion to suppress, the investigators took another tack: they decided to surreptitiously tail Schmidt until he unknowingly left DNA in public. Whether they did so because it made for good television is entirely unclear.

Members of the investigative team followed Schmidt's Hummer through Jefferson Parish until he stopped at a strip mall and went into a shop. One of the officers jumped out of her unmarked chase vehicle and used a cotton swab on the Hummer's door handle. The Sheriff's office then compared the DNA that was obtained with the DNA found near Eugenie's body. The DNA did not rule Schmidt out as a potential suspect.

Schmidt believes that the officers' conduct was unlawful. In particular, he objects that both (1) the swabbing of the car and (2) the DNA analysis constitute unconstitutional searches under the Fourth Amendment. Schmidt also argues that filming the process was a separate Fourth Amendment violation in and of itself. The Sheriff and his officers disagree.

The parties filed cross motions[1] for summary judgment on the threshold question of whether either the swabbing or the DNA analysis constituted a Fourth Amendment "search". The officers also request qualified immunity. For the following

---

[1] R. Doc. No. 16; R. Doc. No. 17.

reasons, the Court concludes that the swabbing of the door constituted a Fourth Amendment search, but that the officers are entitled to qualified immunity on all Fourth Amendment claims.

I.

A.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a

3

genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.**

Governmental officers sued in their individual capacity are entitled to qualified immunity insofar as their conduct "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted). "Once a defendant invokes qualified immunity . . . the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

A plaintiff must make two showings to overcome a qualified immunity defense. First, the plaintiff must show that the officer's conduct violated a constitutional right. *See Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Second, the plaintiff must show that the constitutional right at issue was clearly established at the time of the

4

alleged violation. *Id.* A court has the discretion to consider the qualified immunity analysis in any order it chooses. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## II.

The parties dispute the threshold issue of whether swabbing the door of Schmidt's Hummer constituted a Fourth Amendment "search." The Court concludes the swabbing was a search under the Fourth Amendment, but that a reasonable officer could conclude otherwise.

### A.

Between *United States v. Katz*[2] and *United States v. Jones*,[3] the sine qua non of a Fourth Amendment search was a governmental intrusion into an area in which an individual had a reasonable expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979). Thus, "notions of physical trespass based on the law of real property were not dispositive" in Fourth Amendment analysis, *United States v. Knotts*, 460 U.S. 276, 285 (1983), and the Amendment's reach did not "turn upon the *presence or absence* of a physical intrusion," *id.* at 280 (emphasis added). "An actual trespass" was "neither necessary nor sufficient to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 713 (1984).

Under the *Katz* approach, the officers here would not have performed a Fourth Amendment search. An individual has no reasonable expectation of privacy in the exterior of an automobile. *See Carswell v. Lewis*, 417 U.S. 583, 590-93 (1974)

---

[2] *See* 389 U.S. 347, 360-62 (1967) (Harlan, J., concurring).
[3] 565 U.S. 400 (2012).

5

(plurality opinion). Thus, even though a detective certainly touched Schmidt's car with the cotton swab, the detective's conduct would not have implicated Schmidt's Fourth Amendment rights because Schmidt had no reasonable expectation of privacy in materials on the exterior of his car. *Cf. New York v. Class*, 475 U.S. 106, 114 (1986) ("The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'").

*Jones*, however, altered (or at least clarified) Fourth Amendment doctrine. Specifically, *Jones* held that an individual need not invariably have a reasonable expectation of privacy before a governmental intrusion constitutes a Fourth Amendment search. *See* 565 U.S. at 406. Instead, *Jones* instructs that some—but not all—trespasses are also Fourth Amendment searches. *See Jones*, 565 U.S. at 406-12. So the net-net of *Jones* is that governmental actions can constitute Fourth Amendment searches "even without a showing of any intrusion upon a justified expectation of privacy." 2 Wayne R. LaFave et al, Criminal Procedure § 3.2 (4th Westlaw ed. 2016); *cf. United States v. Turner*, 839 F.3d 429, 434 (5th Cir. 2016) (articulating two-part test).

In returning trespass to the forefront of Fourth Amendment law, *Jones* prompts just as many questions as it answers. For example, not all trespasses constitute Fourth Amendment searches. *See, e.g.*, *Oliver v. United States*, 466 U.S. 170 (1984); *United States v. Beene*, 818 F.3d 157, 162-63 (5th Cir. 2016). And, perhaps even more importantly, trespass "has taken many forms and changed over time." Orin S. Kerr, *The Curious History of Fourth Amendment Searches* 2012 Sup. Ct. Rev. 67,

6

90. But neither *Jones* nor *Florida v. Jardines* provides much guidance as to what version of trespass law this Court is supposed to follow. *Compare Jardines*, 133 S. Ct. 1409, 1417 (2013) (observing that "[o]ne virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy," and explaining that "physically intruding on . . . property to gather evidence is enough to establish that a search occurred"), *with id.* at 1424 (Alito, J., dissenting) ("[T]he real law of trespass provides no support for the Court's holding today. While the Court claims that its reasoning has 'ancient and durable roots,' its trespass rule is really a newly struck counterfeit." (citation omitted)).

Here, the search involved the physical touching of Schmidt's Hummer in a public parking lot. The search, however, did not damage the Hummer in any way. Accordingly, this Court has to make two determinations when evaluating whether a Fourth Amendment search occurred:

- Does the trespass-trigger for Fourth Amendment coverage extend to a trespass to chattels?

- If so, was the physical touching a trespass to chattels even though the touching did not harm or otherwise affect the Hummer?

*Jones*—which addressed a trespass against a car—settles that a trespass to chattels can constitute a Fourth Amendment search regardless of whether there is a reasonable expectation of privacy. *See* 565 U.S. at 410 (observing that officers "trespassorily inserted" the GPS tracker on the Jeep); *see also id.* at 419 & n.2 (Alito, J., concurring) (implying Court was concluding that search was a trespass to

7

chattles). Thus, just as a trespass to land can constitute a Fourth Amendment search, a trespass to chattels may as well. *See, e.g.*, *United States v. Ackerman*, 831 F.3d 1292, 1307-08 (10th Cir. 2016). And there is no question that an automobile—unlike an open field—is protected by the Fourth Amendment: an automobile is "an effect as that term is used" in the Fourth Amendment. *Jones*, 565 U.S. at 404.[4]

But was this a trespass to chattels? That is a trickier issue. As Justice Alito's *Jones* concurrence explained, the elements of the tort have changed since the founding. "At common law, a suit for trespass to chattels could be maintained if there was a violation of the dignitary interest in the inviolability of chattels." 565 U.S. at 419 & n.2 (Alito, J., concurring) (internal quotation marks omitted). Meanwhile, "today there must be some actual damage to the chattel before the action can be maintained." *Id.* (internal quotation marks omitted). So the choice of a particular understanding of trespass can be outcome determinative when applying *Jones* if a search does not damage or otherwise affect a particular chattel.

The Court concludes that it should follow the view that an officer need not cause damage before committing a trespass to chattels. Not only is that the view of the Second Restatement of Torts, *see* Restatement (Second) of Torts § 217,[5] but it also

---

[4] *See generally* U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, *and effects*, against unreasonable searches and seizures, shall not be violated . . . ." (emphasis added)).

[5] *See United States v. Sweeney*, 821 F.3d 893, 899 (7th Cir. 2016) ("The Restatement approach to trespass is a good starting point.") (citing Laurent Sacharoff, *Constitutional Trespass*, 81 Tenn. L. Rev. 877, 891 (2014)).

8

has the added advantage of not making the scope of the Fourth Amendment turn on whether someone scratches the paint.

The officers raise two main counter-arguments. Neither succeeds.

First, the officers point the Court to *Cardwell*'s conclusion that police did not violate the Fourth Amendment when they scraped paint off a car that was left in a public parking lot. *See* 417 U.S. 583 (1974) (plurarily). But the *Cardwell* plurality opinion—beyond relying solely on the reasonable expectation of privacy examination that was subsequently supplemented with the trespass inquiry in *Jones* (*id.* at 591)[6] —is procedurally inapposite. In particular, though *Cardwell* does begin the inquiry by considering many of the factors traditionally examined when determining whether a Fourth Amendment search occurred, *Cardwell* does not definitively resolve the issue. Instead, *Cardwell* ultimately relies on the Court's conclusion that there was probable cause for the search. *See id.* at 592 ("Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments."). By contrast, here, the parties have just addressed the threshold question of whether there was a search

---

[6] The same is true of *New York v. Class*—another case that the officers attempt to rely on. *See* 475 U.S. 106, 114 (1986). Further, even under the test set out in *Class*, none of the VIN-specific reasoning, *see id.* ("A motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle . . . . [I]t is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile."), would necessarily carry over to the facts here. Thus, while *Class* may be somewhat helpful to the officers at the atmospheric level when determining whether the constitutional rights at issue were clearly established, it is of little help in responding to the argument that the swabbing constituted a Fourth Amendment search under *Jones*.

9

and they have not addressed probable cause. So it is too early to consider whether *Cardwell* excuses the officers' swabbing.

Second, the officers also analogize the swabbing to case law permitting officers to examine garbage left on a street corner. *See, e.g., California v. Greenwood*, 486 U.S. 35 (1988). The officers suggest that Schmidt "abandoned" his DNA on the exterior of his car and, therefore, it did not violate the Fourth Amendment for officers to acquire the abandoned DNA via the swabbing. But whatever the constitutionality of searching Schmidt's curbside garbage for his abandoned DNA (a question on which the Court expresses no opinion), the officers' argument that they may trespass to acquire "abandoned" property is not viable post-*Jardines*. *See* 133 S. Ct. at 1417 ("That the officers learned what they learned only by physically intruding on [defendant's] property to gather evidence is enough to establish that a search occurred.").

The Court concludes that the undisputed facts of this case establish that the officers committed a trespass to chattels when they swabbed Schmidt's Hummer. Under *Jones* that trespass also constituted a Fourth Amendment search. Thus, Schmidt is entitled to partial summary judgment in that the swabbing constituted a search under the Fourth Amendment. The Court stresses that given the present procedural posture—the parties addressed only the threshold issue of whether the swabbing was a Fourth Amendment search—the Court expresses no opinion on the search's ultimate constitutionality.

**B.**

Nonetheless, the Court concludes that, under the second prong of the qualified immunity analysis, the officers are entitled to qualified immunity. The law at the time of the swabbing did not clearly establish that the swabbing was a Fourth Amendment search. Accordingly, the officers' conduct did not violate clearly established constitutional law.

To be sure, the right to be free from unreasonable searches and seizures is clearly established. However, that "abstract rule[] give[s] officials little practical guidance as to the legality of particular conduct." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc). Therefore, when evaluating qualified immunity, this Court must look beyond broad constitutional guarantees and focus instead on whether officials have received "particularized" notice that "their conduct is unlawful." *Id*.

On that point, the law is simply too unsettled after *Jones* for the Court to conclude that it is "beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), that the officers performed a Fourth Amendment search. Neither *Jones* nor *Jardines* is precise as to the body of property law this Court is supposed to follow when applying *Jones*'s trespass test. That unanswered question at the time of the swabbing would permit a reasonable officer to conclude that the swabbing did not constitute a Fourth Amendment search.

For example, a reasonable officer could have concluded—just as the Supreme Court has in the Fifth Amendment context—that *Jones*-triggering trespasses are

"determined by reference to existing rules or understandings that stem from an independent source such as state law." *Georgia v. Randolph*, 547 U.S. 103, 144 (2006) (Scalia, J., dissenting). A reasonable officer could then pivot from that understanding of the Fourth Amendment, and conclude that because the brief, harmless, nearly imperceptible touching would not constitute an actionable trespass under certain understandings of modern tort law, *see* 565 U.S. at 419 & n.2 (Alito, J., concurring), it did not constitute a *Jones*-triggering trespass. Therefore qualified immunity is proper: an officer should not be denied qualified immunity simply because he or she looked to what an actionable trespass was as opposed to the more technical definition of a trespass. *See generally* Restatement (Second) of Torts § 217 cmt. a ("This Section sets forth the ways in which a trespass may be committed. It does not purport to state the circumstances or conditions under which a trespass makes the actor liable.").

After all, *Jones*—notwithstanding Justice Alito's observation that there "was no actual damage to the vehicle," *id.*—is not necessarily dispositive of the question here as to whether a touching must cause harm before constituting a Fourth Amendment search. *Jones* involved the permanent (or at least semi-permanent) physical attachment of a GPS tracker to a car. By contrast here, police only briefly touched Schmidt's Hummer and the vehicle was not affected in any other way.

An officer could conclude that the difference between a temporary, imperceptible swabbing and a physical installation was material to the Fourth Amendment analysis. It is a simple matter of physics—Force = Mass x

Acceleration[7]—that *any* mass added to a car necessarily affects the car. So although the trespass in *Jones* may not have *harmed* the car, it certainly *affected* it in a small, yet nonetheless ultimately measurable and concrete fashion. Thus, a reasonable officer could fairly distinguish the swabbing here from the tracker in *Jones* on the grounds that the swabbing—beyond removing some DNA—had no concrete effect on the vehicle or its owner whatsoever (beyond, perhaps, turning up less-than-helpful evidence on Schmidt).

Because a reasonable officer could fairly conclude that the swabbing of the door handle in a public parking lot did not constitute a Fourth Amendment search, the officers are entitled to qualified immunity with respect to the swabbing.

### III.

In addition to challenging the door swabbing as an unconstitutional search under the Fourth Amendment, Schmidt also argues that the DNA analysis constituted a Fourth Amendment search.

But courts disagree on whether a DNA analysis constitutes a Fourth Amendment search. *Compare United States v. Davis*, 690 F.3d 226, 250 (4th Cir. 2012) ("[T]he government's extraction of Davis' DNA sample from his clothing and creation of his DNA profile for testing in the Neal murder investigation constituted unreasonable searches under the Fourth Amendment."), *with Commonwealth v.*

---

[7] *See also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 812 n.3 (7th Cir.2012) ("In the centuries since publication of the *Principia*, only a few exceptions have been found for Newton's Second Law. Einstein discovered that as velocity nears the speed of light, corrections need to be made to account for effects of special relativity. Also, there are complications at the extremely small scale of quantum mechanics.").

13

*Arzola*, 26 N.E.3d 185, 193-94 (Mass. 2015) ("[W]e doubt that the Fourth Amendment reasoning of the *Davis* court will be adopted by the United States Supreme Court."), and *Raynor v. State*, 99 A.3d 753, 764 (Md. 2014) (The Davis Court's conclusion that the DNA testing at issue in that case constituted a Fourth Amendment search rested on what may now be a faulty premise . . . ."). Therefore, the officers are entitled to qualified immunity with respect to the DNA analysis "because we do not subject officials to monetary liability for picking the losing side when there is divergent case law." *McCreary*, 738 F.3d at 658 (internal quotation marks omitted). The Court does not address whether the DNA analysis was a Fourth Amendment search.

### IV.

Finally, Schmidt argues that officers unconstitutionally permitted the Discovery Channel to film the swabbing. In support, Schmidt relies on *Wilson v. Layne*'s holding that bringing news reporters into a home during a search violates the Fourth Amendment. *See* 526 U.S. 603 (1999).

*Wilson*, however, is distinguishable. The filmed swabbing at issue here took place in a public parking lot—not a home. *See Wise v. City of Richfield*, No. 02-4274, 2005 WL 361492, at *3 (D. Minn. 2005) (distinguishing *Wilson* on the ground that *Wilson* concerned a search of a residence). Unlike a home, an individual has no reasonable expectation of privacy in how their car exterior appears in a public place. *See, e.g.*, *Class*, 475 U.S. at 114; *cf. Cardwell*, 417 U.S. at 590 ("A car has little capacity for escaping public scrutiny."). Thus, the officers are entitled to qualified immunity

14

on the filming claim because filming the exterior of a car in a public parking lot did not violated clearly established constitutional law.

V.

Accordingly,

**IT IS ORDERED** that Michael Schmidt's motion for summary judgment is **GRANTED IN PART**. The swabbing of the Hummer door constituted a Fourth Amendment search. The remainder of Schmidt's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the officers' motion for summary judgment is **GRANTED IN PART**. All federal claims against the officers in their individual capacities are **DISMISSED WITH PREJUDICE**. The remainder of the officers' summary judgment motion is **DENIED**.

New Orleans, Louisiana, April 18, 2017.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE